**CASE NO. 24-4050**

# UNITED STATES COURT OF APPEALS
## FOR THE
# SIXTH CIRCUIT

**DEMOND MOORE**

*Moore-Appellant*

v.

**NEXT GENERATION HOSPITALITY LLC**

*Defendant-Appellee*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
Civil Action No. 1:22-cv-00548-MRB
Honorable Michael R. Barrett, United States District Judge, presiding

**BRIEF OF APPELLEE**

/s/ Joshua Adam Engel
Joshua Adam Engel (OH 0075769)
ENGEL & MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
 (513) 445-9600
 (513) 492-8989 (Fax)
engel@engelandmartin.com

**CORPORATE DISCLOSURE**

Appellee is not a subsidiary or affiliate of a publicly owned corporation.   There is no publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome.

**TABLE OF CONTENTS**

CORPORATE DISCLOSURE ......................................................................ii

STATEMENT OPPOSING ORAL ARGUMENT ...........................................1

JURISDICTIONAL STATEMENT ...............................................................2

STATEMENT OF ISSUES .........................................................................3

STATEMENT OF THE CASE .....................................................................4

SUMMARY OF ARGUMENT ....................................................................12

ARGUMENT ...........................................................................................14

    A.   Standards Of Review .................................................................14

    B.   The District Court Properly Granted The Motion For Summary
        Judgment .................................................................................15

        1.   The Framework For Moore's Claims .................................15

            a.   The *Mcdonnell Douglas* Framework .......................15

            b.   This Court Should Reject Moore's Invitation To Apply
               A Direct Evidence Test .........................................16

        2.   Moore Failed To Establish He Was Disabled Or To Identify
            Any Comparators. .........................................................18

        3.   Moore Failed To Identify A Comparator ............................24

        4.   The Failure To Accommodate And Disability Discrimination
            Claims Fail Because Moore Received Precisely What He
            Requested .....................................................................25

        5.   Moore Fails To Satisfy The Causation Element For A
            Retaliation Claim ..........................................................29

        6.   NGH Had A Legitimate Non-Discriminatory And Non-
            Retaliatory Reason To Terminate Moore ...........................31

CONCLUSION .......................................................................................33

CERTIFICATE OF COMPLIANCE ...........................................................33

CERTIFICATE OF SERVICE ...................................................................33

DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS ..............34

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Alleva v. Crown Linen Serv.*, D.Conn. No. 3:14-CV-1971, 2016 U.S. Dist. LEXIS 121277 (Sep. 8, 2016) ...................................................................20

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................14

*Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382 (6th Cir. 1993) .........................14

*Baum v. Metro Restoration Services*, 764 F. App'x 543 (6th Cir. 2019) ...................................16

*Belasco v. Warrensville Heights City Sch. Dist.*, 634 F. App'x 507 (6th Cir. 2015) ...................................................................19

*Booker v. Bd. of Edn. of the Toledo Sch. Dist.*, 6th Cir. No. 24-3167, 2024 U.S. App. LEXIS 31744 (Dec. 12, 2024) ...................................................24

*Booth v. Nissan N. Am., Inc.*, 927 F.3d 387 (6th Cir. 2019) ...............................23

*Brady v. Bd. of Edn.*, 222 F. Supp. 3d 459 (D.Md. 2016) ...............................20

*Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834 (6th Cir. 2018) .........................28

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ...............................14

*Cooley v. Fedex Freight, Inc.*, 6th Cir. No. 19-1413, 2020 U.S. App. LEXIS 29071 (Sep. 11, 2020) ...............................26

*Dorsey v. DeJoy*, S.D.Ohio No. 1:18-cv-615, 2022 U.S. Dist. LEXIS 56305 (Mar. 29, 2022) ...............................23

*Ferrari v. Ford Motor Co.*, 826 F.3d 885 (6th Cir. 2016) ...............................17

*Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409 (6th Cir. 2020) ...............................16

*Gamble v. Greater Cleveland Reg. Transit Auth.*, No. 15-4208, 2017 U.S. App. LEXIS 16219 (6th Cir. June 2, 2017) ...............................19

*Gamble v. JP Morgan Chase & Co.*, 689 F. App'x 397 (6th Cir. 2017) ...............................15

*Gearhart v. E.I. DuPont de Nemours & Co.*, 833 F.App'x 416 (6th Cir. 2020) ...............................16

*Gleason v. Food City 654*, E.D.Tenn. No. 3:13-CV-712-PLR-HBG, 2015 U.S. Dist. LEXIS 52558 (Apr. 22, 2015) ...............................23

*Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672 (6th Cir. 2016) ...............................19

iv

*Griffin v. Secy. of Defense*, 6th Cir. No. 23-3220, 2023 U.S. App. LEXIS 32390 (Dec. 5, 2023) ................................................................ 24, 25

*Hoffman v. O'Malley*, 849 F.App'x 535 (6th Cir. 2021) ...........................25

*Holland v. Methodist Hosps.*, N.D.Ind. No. 2:14-CV-88, 2016 U.S. Dist. LEXIS 135164 (Sep. 30, 2016) ...........................................................20

*Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655 (6th Cir. 1999) ..............24

*Hostettler v. Coll. of Wooster*, 895 F.3d 844 (6th Cir. 2018) ............ 16, 17

*Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862 (6th Cir. 2007) ............. 16, 25

*Kuhn v. Washtenaw Cty.*, 709 F.3d 612 (6th Cir. 2013) ...........................30

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ...............................14

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) .......................15

*McGonegle v. Select Comfort Retail Corp.*, S.D.Ohio No. 1:19-cv-442, 2021 U.S. Dist. LEXIS 11916 (Jan. 22, 2021) ....................................19

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) ............29

*Morrissey v. Laurel Health Care Co.*, 946 F.3d 292 (6th Cir. 2019) ........21

*Neely v. Benchmark Family Services*, 640 F. App'x 429 (6th Cir. 2016) ...............................21

*Parker v. Magna Seating*, M.D.Tenn. No. 1:20-00003, 2021 U.S. Dist. LEXIS 99420 (May 14, 2021) ...........................................................22

*Perry v. Am. Red Cross Blood Servs.*, M.D. Tenn. No. 3-13-1146, 2015 U.S. Dist. LEXIS 38515 (M.D. Tenn. Mar. 26, 2015) .............................19

*Peterec-Tolino v. Commercial Elec. Contrs., Inc.*, S.D.N.Y. No. 08 Civ 0891, 2011 U.S. Dist. LEXIS 125102 (Oct. 26, 2011) ....................20

*Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) ...........................................................14

*Quinn v. Ohio State Hwy. Patrol*, S.D.Ohio No. 2:07-CV-187, 2008 U.S. Dist. LEXIS 73549 (Sep. 24, 2008) ...............................................22

*Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274 (6th Cir. 2012) ............30

*Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553 (6th Cir. 2009) ......32

*Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099 (6th Cir. 2008) ..........18

*Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463 (6th Cir. 2012) .........30

*Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367 (6th Cir. 2002) .........29

*White v. Interstate Distrib.*, 438 F.App'x 415 (6th Cir. 2011) ................................................24

*Whitfield v. Tennessee*, 639 F.3d 253 (6th Cir. 2011) ............................................15

*Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384 (6th Cir. 2017)............................15

*Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365 (6th Cir. 2017) ..........................14

*Yelder v. Norfolk S. Ry.*, 6th Cir. No. 21-1141, 2022 U.S. App. LEXIS
   22608 (Aug. 12, 2022) ................................................................................30

## Statutes and Other Authorities

28 U.S.C. § 1292 ................................................................................2

28 U.S.C. § 1331 ................................................................................2

28 U.S.C. § 1343 ................................................................................2

42 U.S.C. § 12102 ........................................................................ 12, 23

*Black's law Dictionary,* ........................................................................18

*Merriam-Webster.com Dictionary,* ........................................................18

*The New Oxford American Dictionary* ....................................................18

**STATEMENT OPPOSING ORAL ARGUMENT**

Appellant respectfully suggests that oral argument in this matter is unnecessary. This case does not raise an issue of significant concern and Appellee does not believe oral argument will assist the Court in its analysis of the disputed issues presented on appeal.

**JURISDICTIONAL STATEMENT**

This action is a civil action of which the District Court had original jurisdiction under 28 U.S.C. §§ 1331 and 1343, and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. §1441(a) in that it arises, in part, under the laws of the United States, specifically Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

This is an appeal from a final judgment of a District Court. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1291.

**STATEMENT OF ISSUES**

Whether the District Court properly granted summary judgment in favor of an employer on a disability discrimination claim where the employee failed to provide sufficient proof of a physical or mental impairment that substantially limited one or more major life activities.

Whether the District Court properly granted summary judgment in favor of an employer on a disability claim where the employee failed to establish that decision makers knew or had reason to know of his purported disability.

Whether the District Court properly granted summary judgment in favor of an employer on a retaliation claim because the employee failed to identify any protected activity.

Whether the District Court properly granted summary judgment in favor of an employer on disability discrimination and retaliation claims where the employer had a legitimate non-discriminatory and non-retaliatory reason to terminate the employee.

## STATEMENT OF THE CASE

Appellee Next Generation Hospitality ("NGH") operates Kings Inn and Suites in Mason, Ohio. Moore was hired in 2021 as a house-keeping employee. In his employment application, Moore lied about his experience and education. (Pl. Depo., R.10-1, PageID#154 ("So when you wrote down that you completed three years at Wright State on your job application, that was not a true statement, was it? A. No, it was not.").) Significantly, Moore indicated that he did not have any health issues or concerns.[1]



(Application, R.10-12; PageID#219.) This is consistent with the Manager's deposition testimony:

> Q. Did anyone ever mention to you when Mr. Moore was hired that he had any kind of physical limitations at all?
> A. No.

---

[1] Moore had answered an interrogatory that he had included this information in his job application. This was a lie. (Pl. Depo., R.10-1, PageOD#154.) During his deposition, Moore claimed there was a "Second" job application. Nobody has seen this. (Pl. Depo., R.10-1, PageID#154.) When asked if he described any health concerns on this second application, he could say only "I don't remember." (Pl. Depo., R.10-1, PageID#154.)

On February 8, 2021, a supervisor noted in an email that Moore had not completed his assigned tasks. She noted that Moore "worked about 10 hours this day and overall completed a few room request per the owner and disregarded every task that was given to him to do.. [Moore] clearly is defiant and refuses to obey orders, from his Manager/Supervisor and the owner…" (sic) (Email, R.10-3, PageID#207.) Another manager wrote a memorandum stating "During his whole shift [Moore] was being rude and disrespectful." (Memo., R.10-4, PageID#208.) Moore was given a verbal warning and asked to improve. This did not happen. His supervisor later wrote:

> This statement is in reference to an employee [Moore] after the time of the verbal documentation on 2/8/2021 in which there was a conversation on the performance and quality of work of [Moore], following the conversation there was an agreement that tasks given to him would be completed and quality of work would improve. Since then [Moore] has not improved yet he has made it very difficult for others to work creating a hostile environment. I have attempted to approach [Moore] on this behavior and he intentionally ignores me and doesn't follow through with work assignments and just clocks out and leaves anytime you attempt to follow up with him. [Moore] doesn't listen to any direct orders from his supervisor, the owner and GM of the hotel. [Moore's] acts of insubordination is very disturbing and takes away from the focus and the needs of a working environment.

(Statement, R.10-5, PageID#209.) On February 16, 2021, Moore received a written warning after he showed up late for work.



(Disciplinary Action Form, R.10-6, PageID#211.) Moore was given a "Second Warning" on March 10, 2022. The warning notes that "He constantly fails to complete his assigned work & becomes combative with the MGT team." (Employee Write Up, R.10-7, PageID#212-231.)

| Type of Warning | | |
| --- | --- | --- |
| ☐ First Warning | ☒ Second Warning | ☐ Final Warning |

| Type of Offenses | | |
| --- | --- | --- |
| ☐ Tardiness/Leaving Early | ☒ Absenteeism | ☐ Violation of Company Policies |
| ☒ Substandard Work | ☐ Violation of Safety Rules | ☐ Rudeness to Customers/Coworkers |
| ☐ Other:_____ | | |

**Details**

**Description of Infraction:** On 2/9/2021 Alex was informed in a meeting with management that we only needed housekeepers, able to clean 2 room per hours. If unable to do that job, we would not have work for him. He replied no problem If that is what you need that's what I will do, but I need 40 hours. He was also told that he would be given assignments in writing & that is what he would need to do along with notifying the MOD hourly of his completed rooms so the system could be updated. 3/10/21 he failed to complete his work assignment for the 2nd day in a row. He also pulled another employee off her board leaving us short the needed rooms to sell & killing productivity. On 3/9 he completed 10 of 12 rooms & the 10 he completed the bed were already made. 3/10 he & the employee he removed from her board completed 4 of 15 rooms he was assigned & 4 of those the beds were made. Alex is not meeting the minimum standard required. He constantly fails to complete his assigned work & becomes combative with the MGT team. He was 52 minutes late for his shift without calling.

(Employee Write Up, R.10-7, PageID#212-231.)

On March 13, 2021, Moore presented a note from a chiropractor recommending that he be limited to "light duty" through March 18, 2021. (Authorization, R.10-8,

PageID#214.)  This is the first time NGH was aware that Moore had some physical issues:

> Q. Before you received this form, did he ever make any requests for light duty, request accommodations in any way?
> A. No.
> Q. Did he ever express to you that he was having physical issues or limitations in any way?
> A. No.

(Kaur Depo., R.10-2, PageID#189.)    NGH, without asking for additional documentation or medical records, complied and assigned him lighter tasks for the week.  (Kaur Depo., R.10-2, PageID#189 ("we made sure he was on light duty during this time period").)

On March 15, 2021, the Assistant General Manager wrote a memorandum documenting Moore's continued inappropriate and insubordinate conduct.  (Statement, R.10-9, PageID#215.)  She wrote:

> Since January 2021, [Moore] has been creating a hostile work Environment His attitude shifts daily regarding the wok he has 10 do. He has accused me (manager/owner) of being a racist multiple times. [Moore] continues to complain when he is asked a question regarding his housekeeping board. [Moore]  also has left his shift w/o completing the tasks he has been assigned for the day. It has become impossible to foster a productive, collegial work environment when he continues 10 be combative and disrespectful to the management and the staff at Kings Inn and Suites.

(Statement, R.10-9, PageID#215.)2  Moore's misconduct continued.  On March 18, 2021, Moore was rude to a guest.  This was documented in another memorandum.3 (Memorandum, R.10-10, PageID#216.) The Manager described the incident in her deposition:

> …I was at the front desk when a guest came down, and he told me about this incident where they asked [Moore] that – they needed some towels. He's like oh, you need to go downstairs. Like this is my -- he told me something like this is -- like this is not my job, or something along those lines, but I don't remember exactly what was said. I know the guest came, and he told me this.
>
> So I said Alex -- like I did talk to him about this, so -- but he just wasn't professional and did not help the guest….
>
> I asked him what happened, but -- I mean, either way, he just didn't do his job. Like in the  hospitality business, we are -- if a guest asks for something, you make sure the guest gets it,  so -- either, you know, pleasantly he could have said it, but he didn't say that…

---

[2] Moore denied that this statement was accurate.  However, when asked why supervisors would fabricate these statements, he was unable to identify a discriminatory motive.  He simply said that they were upset that he was unable to make "14 freaking beds every day."  (Pl. Depo., R.10-1, PageID#162.)

[3] Moore initially at his deposition said that the allegation from the guest was "bogus." (Pl. Depo., R.10-1, PageID#162.)   However, when asked why supervisors would fabricate these statements, he was unable to identify a discriminatory motive.   He changed his story and admitted that the interaction with the customer occurred:

> Q. So, again, can you think of a reason why Ms. Kaur would create false information about you?
> A. I didn't say that was false. I said that was true. I remember that guest.

(Pl. Depo., R.10-1, PageID#162.)

(Kaur Depo., R.10-2, PageID#190.)  The manager further testified:

> To the point if you are being rude to our staff, to me that's fine. But when you take it outside to our guests, yeah, that's a problem for me. So this is something that, you know, he is already being unprofessional with us, and now you're taking your anger and whatever issues you have out on our, you know, guest now. So this was a huge no for me. Like essentially this was kind of the last straw for me with him, and I, you know, decided that he should no longer work for us….

(Kaur Depo., R.10-2, PageID#200.)

On March 26, 2021 Moore, again, arrived late for work for the eleventh straight time. (Kaur Depo., R.10-2, PageID#191.)  The Manager testified that Moore was "just running around the building, being aggressive towards [his manager], just yelling, screaming, especially around the building when you're just going around, guests are watching, like we don't need that." (Kaur Depo., R.10-2, PageID#201.)  Management decided to terminate Moore.  The manager testified:

> A. … at that point, we did decide that, you know, this is continuing on multiple days, multiple times, that we should probably, you know, fire him at some point, so --
> Q. Was it based on his insubordination, talking back and being disrespectful for that, or not doing his duties? What was the reason why you were thinking about terminating him?
> A. Both. He would not show up to work. He would show up to work late…. He would not tell us where he's at. When we need rooms cleaned, we're hunting down to look for him. He was just disobedient. He was crazy. So there were a lot of factors in play. It was just not one instance that – you know, unfortunately it happened this way that he was fired, but there were a lot of things leading up to it that we were thinking about firing him.

(Kaur Depo., R.10-2, PageID#193.)   As documented in a contemporaneous memorandum, when told by the General Manager that he was likely to be terminated, instead of promising better conduct he continued to be rude and insubordinate. (Memorandum, R.10-11, PageID#218.) She wrote:

> [Moore] returned to the laundry area even more aggressive while insulting me, saying you a dirty bitch you let me work and then you fire me. .. He said you going to hear from my lawyer cause you fucked up firing me while on restrictive duty.

(Memorandum, R.10-11, PageID#217-218.) The manager testified at her deposition: "Like he was being very disruptive that day. He came to work late. He wasn't doing anything. Like that was it. That was when we fired him."  (Kaur Depo., R.10-2, PageID#176.)

Moore filed a lawsuit, which was removed to the District Court.  (Complaint, R.3; Amended Complaint, R.4; Notice of Removal, R.1).)   Moore asserted shotgun claims under various and varied theories, including gender discrimination, disability discrimination, sexual harassment, and hostile work environment under both federal and Ohio law.

Following discovery, NGH filed a Motion for Summary Judgment.  (Motion, R.11.)  After the Motion for summary judgment was filed, Moore abandoned all but his disability-related claims.  (Memorandum, R.13, PageID#297–298.)   The District Court granted the Motion for Summary Judgment.  (Order, R.15.)   The District Court concluded that "Moore has not shown that he is disabled, the *sine qua non* of a disability

discrimination claim." (Order, R.15, PageID#321.)  The District Court also concluded that decisionmakers were unaware of the specifics of his disabilities or restrictions and that he had failed to adequately identify relevant comparators. (Order, R.15, PageID#323-324.)   Finally, in dismissing the retaliation claim, the District Court concluded that Moore had failed to indemnify any protected activity.  (Order, R.15, PageID#327.)

      This appeal followed.

## SUMMARY OF ARGUMENT

Moore cannot show that he suffered an actual "disability" under the ADA. A plaintiff must show a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Moore did not produce evidence showing that his scoliosis substantially limited a major life activity; he admitted he had no documents to support his disability, and produced no expert testimony in discovery. Moore's bare assertions regarding a health condition or concern, without any supporting medical evidence, cannot establish a physical or mental impairment within the meaning of the ADA.

Moore failed identify any nondisabled person who was treated more favorably which precludes him from sustaining his burden of presenting a *prima facie* case of disability discrimination.

NGH cannot be held liable for failing to provide an accommodation that Moore never requested for a disability that NGH was unaware Moore had. NGH was not aware of Moore's alleged disability until he provided a note from a chiropractor And then, after the note was provided, NGH allowed him to be on "light duty" as he had requested. The "light duty" assignment was never "revoked." Moore provides no evidence that he needed further accommodations either prior to this time or at the end of this five day period.

Moore fails to set forth a *prima facie* case that he was fired for a retaliatory reason. Moore failed to present sufficient evidence to satisfy the causation requirement and his

misconduct subsequent to the submission of his request for light duty constitutes an intervening legitimate reason for NGH to take an adverse employment action which dispels any inference of retaliation based on temporal proximity.

Assuming that Moore can make a *prima facie* case that he was fired for a discriminatory or retaliatory reason, his claim still fails.   Moore was terminated because he was "disruptive," "disobedient," and "did not listen."   One witness put it simply: "He was just a bad employee, just simple as that. He just didn't do his job as described." These reasons were well documented over a period of time.

13

## ARGUMENT

Appellant originally brought multiple claims against his former employer, including gender discrimination, sexual harassment, and hostile work environment. However, on appeal he pursues only claims related to his alleged disability.

### A.    Standards Of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant has the burden of establishing that there are no genuine disputes of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). A court must draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).

This Court reviews a district court's summary judgment rulings *de novo*. *Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017).

**B.**    **The District Court Properly Granted The Motion For Summary Judgment**

**1.**    **The Framework For Moore's Claims**

**a.**    **The *McDonnell Douglas* Framework**

This Court most commonly analyzes disability discrimination and retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Whitfield v. Tennessee*, 639 F.3d 253, 259 (6th Cir. 2011); *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To make out a *prima facie* disability discrimination case, Moore must show that (1) he has a disability, (2) he was "otherwise qualified for the position, with or without reasonable accommodation," (3) he "suffered an adverse employment decision," (4) his employer "knew or had reason to know" of his disability, and (5) he was replaced or his position remained open. *Williams v. AT&T Mobility Servs. LLC*, 847 F.3d 384, 395 (6th Cir. 2017) (citation omitted). Under this test, assuming that Plaintiff can establish a *prima facie* case of employment discrimination or retaliation, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action. *Gamble v. JP Morgan Chase & Co.*, 689 F. App'x 397, 401 (6th Cir. 2017). If the defendant does so, the burden shifts back to the plaintiff to show the defendant's explanation is pretextual. *Id.* This Court similarly analyzes retaliation claim under the *McDonnell Douglas* burden-shifting framework. *Williams*, 847 F.3d at 394; *Whitfield,* 639 F.3d at 259.

15

### b.  This Court Should Reject Moore's Invitation To Apply A Direct Evidence Test

Moore, relying on *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 853 (6th Cir. 2018), suggests that this case should be analyzed under the "direct" test for discrimination instead of the *McDonnell Douglas* framework.  Appellant Br. at 10-11.

Direct evidence of disability discrimination is evidence that does not require the fact finder to draw any inferences to conclude that the disability was at least a motivating factor.  *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020), *quoting Hostettler*, 895 F.3d at 853.  This occurs when the employer "acknowledges that its employment decision was based on the employee's disability."  *Gearhart v. E.I. DuPont de Nemours & Co.*, 833 F.App'x 416, 422 (6th Cir. 2020).  For example, in *Baum v. Metro Restoration Services*, 764 F. App'x 543, 547 (6th Cir. 2019), this Court applied a direct evidence framework where an employer told an employee with a heart condition that he was being fired because of his "health issues and doctor's appointments."  Similarly, in *Kleiber v. Honda of Am. Mfg.*, 485 F.3d 862, 869 (6th Cir. 2007), this Court applied a direct evidence framework where the employer did not contest that the employee was disabled, but "the parties' dispute centers on whether [the employer] could reasonably accommodate [the employee's] disability by transferring him to a different job…"

In this case, the indirect test applied by the District Court is more appropriate because NGH had a legitimate reason for Moore's termination unrelated to any alleged disability.  This Court has explained that the direct test should be used only where an

employee is "fired solely because the [employer] determined that it no longer could accommodate" a disability. *See also Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016) (noting that *McDonnell Douglas* test is unnecessary where an employer acknowledges that it relied upon the plaintiff's disability in making its employment decision). The facts of *Hostettler* illustrate this. The plaintiff in *Hostettler* was a terminated university employee who asserted a failure to accommodate claim. This Court denied summary judgment to the college on the basis that the plaintiff presented evidence creating a genuine dispute of fact that she could perform the essential functions of her job with a modified work schedule as a reasonable accommodation for her disability. Notably, this Court applied a direct test not because an accommodation had been rescinded, but because the employer admitted that there was "no other reason" that the employee had been terminated. *Id.* at 855-57.

Moore's argument that the direct test applies because an accommodation was "rescinded" is not supported by the record. The only accommodation Moore received was five days on light duty after he presented a note from a chiropractor. (Authorization, R.10-8, PageID#214.) This was, the record shows, the first time NGH was aware that Moore was claiming that he had physical issues which prevented him from performing his tasks.4 Nonetheless, NGH accommodated that request. (Kaur

---

4 Moore had, most notably, indicated on his job application that he did not have any health issues or concerns. (Application, R.10-12; PageID#219.)

Depo., R.10-2, PageID#189.) Moore's light duty accommodation was not revoked or canceled, it merely ended when the time period indicated by the chiropractor expired. The accommodation was, thus, never "rescinded."  The term "rescind" means to "revoke, cancel, or repeal."  The New Oxford American Dictionary (2d ed. 2005).[5] Moore never asked for anything additional after those five days were up or indicate that he remained unable to perform tasks, as a manager testified:

> Q. And after the last date of this document…  did he indicate to you that he was unable to perform any of his job duties?
> A. No.

(Kaur Depo., R.10-2, PageID#196.)

## 2. Moore failed To Establish He Was Disabled Or To Identify Any Comparators.

The ADA protects an employee from discrimination because of a disability.  *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). A "basic element for a cause of action under the ADA" is that the employer "harbored an 'animus toward the disabled' that was a but-for cause" of the discrimination. *Gamble v. Greater Cleveland Reg. Transit Auth.*, No. 15-4208, 2017 U.S. App. LEXIS 16219 (6th Cir.

---

[5] *See also Merriam-Webster.com Dictionary*, Merriam-Webster, https://www.merriam-webster.com/dictionary/rescind (rescind means, *inter alia,* "to take away" or "to make void by action…")  (accessed  Apr.  21,  2025); *Black's law Dictionary,* https://thelawdictionary.org/rescind (rescind means to "abrogate, annul, avoid, or cancel…") (accessed April 21, 2025).

June 2, 2017), *quoting Gohl v. Livonia Pub. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016).[6]

Moore cannot show that he suffered an actual "disability" under the ADA. A plaintiff must show a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The district court, in another case, correctly observed that "it is clear that 'not every impairment, illness or injury will constitute a disability,' especially when the plaintiff provides 'no medical proof that [the] alleged medical conditions substantially limited a major life activity.'" *McGonegle v. Select Comfort Retail Corp.*, S.D.Ohio No. 1:19-cv-442, 2021 U.S. Dist. LEXIS 11916, at *25 (Jan. 22, 2021), *quoting Perry v. Am. Red Cross Blood Servs.*, M.D. Tenn. No. 3-13-1146, 2015 U.S. Dist. LEXIS 38515, at *2 (M.D. Tenn. Mar. 26, 2015). In this case, Moore testified only that because of scoliosis he could not "touch his toes" and that "it's difficult to do a lot of -- you know, long periods of standing." (Pl. Depo., R.10-1, PageID#152.) Such difficulties do not show actual disability. *See Jones v. AKKO Fastener, Inc.*, S.D. Ohio No. 1:09-cv-286, 2010 U.S. Dist. LEXIS 86368, at *11 (Aug. 23, 2010) (difficulties must be more than merely "inconvenient" to achieve the "severity required to qualify the ailment as a substantial limitation"). Moore did not produce evidence showing that his scoliosis substantially limited a major life activity; he admitted

---

[6] Ohio's disability discrimination law parallels the Americans with Disabilities Act in all relevant respects. *Belasco v. Warrensville Heights City Sch. Dist.*, 634 F. App'x 507, 514 (6th Cir. 2015).

he had no documents to support his disability, and produced no expert testimony in discovery.[7]  (Pl. Depo., R.10-1, PageID#152-153; Interrogatory Answers 14, 15, 17, R.10-13, PageID#231-235.)   Moore did not testify that, for example, his scoliosis caused significant pain, affected his sleeping habits, or made it more difficult for him to take care of himself.  *See Peterec-Tolino v. Commercial Elec. Contrs., Inc.*, S.D.N.Y. No. 08 Civ. 0891, 2011 U.S. Dist. LEXIS 125102, at *13-14 (Oct. 26, 2011) (finding that claim of scoliosis was insufficient to support a finding that these impairments substantially limited plaintiff in major life activities). *Cf Daniell v. Commr. of Social Sec.*, M.D.Fla. No. 8:15-cv-1563-T-JSS, 2016 U.S. Dist. LEXIS 93882, at *25-26 (July 19, 2016) ("the diagnosis and continued treatment of plaintiff's scoliosis is not, in itself, determinative of disability, nor does it establish functional limitations resulting from the disorder").[8]

---

[7] In his Brief, Moore asserts, "he has provided testimony and submitted treatment records indicating that he suffers from a chronic back condition which limits his major life functions."  Appellant Br. at 18, citing  "RE 10-1, Page ID #158."  However, nothing in the single record source cited by Appellant appears to support that claim.

[8] The only case cited by Appellant is *Alleva v. Crown Linen Serv.*, D.Conn. No. 3:14-CV-1971, 2016 U.S. Dist. LEXIS 121277 (Sep. 8, 2016).  In that case, the employee had evidence beyond inconvenience of the kind of severity required of an ailment to say that the ailment qualifies as a substantial limitation: the employee had "a metal rod in his back to correct distorted curvature of his spine due to scoliosis, which limits his ability to lift, bend, and twist." *Id.* at *11.  While it is possible that scoliosis can qualify as a disability, the record in this case is insufficient for this employee to make such a claim.  In other cases where a plaintiff claimed that scoliosis constitutes a disability, the employee created a record that that scoliosis caused pain, affected sleeping habits, "and, at times, makes it more difficult for [the employee] to take care of herself, shower, and dress…" *Holland v. Methodist Hosps.*, N.D.Ind. No. 2:14-CV-88, 2016 U.S. Dist. LEXIS 135164, at *45 (Sep. 30, 2016).  *Cf. Brady v. Bd. of Edn.*, 222 F. Supp. 3d 459, 468 (D.Md. 2016) (employee "submitted a doctor's note" showing "diagnoses of cervical disc

In a decision that post-dates the ADAAA and its more expansive rules of construction, this Court held that a plaintiff's "bare assertions" regarding a health condition or concern, "without any supporting medical evidence, cannot establish a 'physical or mental impairment' within the meaning of the ADA." *Neely v. Benchmark Family Services*, 640 F. App'x 429, 433 (6th Cir. Jan. 26, 2016).[9]  This Court has observed that, while the use of expert testimony to establish disability is not required, a "plaintiff still carries the evidentiary burden to show his disability."  Moore's efforts to meet this burden by directing this Court to the "light duty authorization" to support his claim fails.  This document is insufficient to meet Moore's burden to establish a disability.  Under the ADA, a plaintiff must show a "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).   This

---

disorder, chronic lower back pain and scoliosis" and opining that employee could not "write, bend, lift or sit for long periods").  In *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 300-301 (6th Cir. 2019), for example, this Court found that an employee with scoliosis had described a disability based on evidence that she "was in pain constantly, and her [work] shifts exacerbated the pain. Specifically, she said that she had severe pain in her buttocks and right leg and numbness and tingling in her feet after a shift" and that "she had so much trouble bending over that it was difficult to put on her underwear."  The employee also submitted evidence, unlike Moore, that she could not "complete household chores that required lifting, bending, or stooping after working."

[9] In *Neely*, the court observed that the ADAAA relaxed the standard for "substantial limitation," however, this Court went on to state that "a lesser burden is a burden nonetheless." 640 F.App'x at 434-35. This Court said that "[w]hile a diagnosis might not be absolutely necessary [to establish a record of impairment], in this situation, some diagnosis must explain the duration or severity of the impairment." *Id.* at 435. This Court held that the plaintiff's "self-described symptoms to his physicians, without corroborating medical evidence or any diagnosis are insufficient to establish a substantial limitation on a major life activity." *Id.*

document contains no diagnosis, much less any medical findings that would substantiate or support any such diagnosis. Courts in this Circuit have observed, "Merely being under the care of a doctor for a medical problem is not in and of itself sufficient to show a disability." *Parker v. Magna Seating*, M.D.Tenn. No. 1:20-00003, 2021 U.S. Dist. LEXIS 99420, at *16 (May 14, 2021). Instead, this document merely identifies a problem that evidently led Moore to visit a chiropractor one time, with no indication that these health concerns were confirmed (or even investigated) through examination or medical tests. This bare-bones document does not disclose the underlying sources of the information the medical professional relied upon, so it is highly debatable whether this information could be "presented in a form that would be admissible in evidence" to establish a disability. Fed. R. Civ. P. 56(c)(2).

At best, Moore has presented a document saying that he should not lift "in excess of 30 pounds" for five days.[10] (Authorization, R.10-8, PageID#214.) Such a temporary restriction on lifting does not rise to the level of a disability under the ADA.[11] This

---

[10] The record does not reflect how this limitation would have prevented Moore from performing his job. He complained about not being able to make beds, but bed sheets weigh much less than 30 pounds.

[11] This Court has observed that a restriction on lifting is not a substantial limitation of a life activity. "Federal case law supports that a maximum weight restriction is not a disability as defined by the ADA." *Quinn v. Ohio State Hwy. Patrol*, S.D.Ohio No. 2:07-CV-187, 2008 U.S. Dist. LEXIS 73549, at *38 (Sep. 24, 2008) (citations omitted); *Quirin v. Abbott Laboratories*, W.D.Mich. No. 1:08-cv-011, 2009 U.S. Dist. LEXIS 52804, at *12 (May 22, 2009) ("The Sixth Circuit has not explained how a plaintiff might establish a disability from restriction on lifting.").

Court has held that "simply having a work restriction does not automatically render one disabled." *Booth v. Nissan N. Am., Inc.*, 927 F.3d 387, 394 (6th Cir. 2019). And courts in this Circuit have been clear: "there is a difference between a transitory injury, that is expected to heal fully in a short period of time, and a disability." *Dorsey v. DeJoy*, S.D.Ohio No. 1:18-cv-615, 2022 U.S. Dist. LEXIS 56305, at *40 (Mar. 29, 2022). *See also Gleason v. Food City 654*, E.D.Tenn. No. 3:13-CV-712-PLR-HBG, 2015 U.S. Dist. LEXIS 52558, at *13 (Apr. 22, 2015) (where temporary restrictions on lifting lasted about one month, plaintiff "failed to allege a physical impairment other than a short-term temporary restriction, and his injury is not covered under the ADA").

Finally, Moore argues that a genuine issue of material fact exists with respect to whether NGH regarded him as being disabled. Pl. Memo. at PageID#292-293. Moore correctly observes that an individual could indeed be considered disabled under the ADA if he was "being regarded" by his employer as having "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A), (C). However, the five day limit in the note from the chiropractor is fatal to this argument. Moore cannot establish a "regarded as disabled" claim with his impairments because the ADA explicitly states that the "regarded as" definition "shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." Id. at §

_____

12102(3)(B).   *See White v. Interstate Distrib.*, 438 F.App'x 415, 420 (6th Cir. 2011) (affirming summary judgment where "doctor expected his restrictions to be in effect for only a month or two").   Moreover, to the extent that Moore maintains that NGH regarded him as disabled when it granted his "light duty" request, this episode would suggest, at most, NGH's belief that Moore was unable to perform a specific aspect of his particular job for a short period of time; this falls well short of evidencing a belief that Moore was substantially limited in the major life activity of working.

### 3.    Moore Failed To Identify A Comparator

Moore failed identify any nondisabled person who was treated more favorably. This Court has held that a plaintiff alleging disability discrimination needs first to establish a *prima facie* case of discrimination by "showing that similarly situated non-protected employees were treated more favorably." *Hopkins v. Elec. Data Sys. Corp.*, 196 F.3d 655, 660 (6th Cir. 1999).   *See also Booker v. Bd. of Edn. of the Toledo Sch. Dist.*, 6th Cir. No. 24-3167, 2024 U.S. App. LEXIS 31744, at *6 (Dec. 12, 2024) (plaintiff "failed to establish a *prima facie* case of age or disability discrimination because she offered no evidence that a similarly situated employee outside of her protected class received more favorable treatment"); *Griffin v. Secy. of Defense*, 6th Cir. No. 23-3220, 2023 U.S. App. LEXIS 32390, at *9 (Dec. 5, 2023) (plaintiff "has not identified a nondisabled comparator employee… This alone precludes [him] from sustaining his burden of presenting a prima facie case of disability discrimination.")

24

Yet, When asked to provide a basis for his disability claims in interrogatory answers, Moore failed to identify any nondisabled person who was treated more favorably.  (Interrogatory Answers Nos. 15, 17, R.10-13, PageID#231-235.)  Plaintiff has produced less evidence of disability discrimination than plaintiffs in other Sixth Circuit cases whose claims failed to survive summary judgment.  In *Griffin*, 2023 U.S. App. LEXIS 32390, at *9, a plaintiff's claim was dismissed on summary judgement when the disabled individual had not "identified a nondisabled comparator employee or pointed to evidence that, after he was fired, [the plaintiff] was replaced by a nondisabled person or that his position remained open."  Similarly, in *Hoffman v. O'Malley*, 849 F.App'x 535, 539 (6th Cir. 2021), a plaintiff's claim was dismissed on summary judgement where she "failed to present to the district court evidence on the disability status of any of the employees she alleged were treated more favorably than her."

### 4.    The Failure To Accommodate And Disability Discrimination Claims Fail Because Moore Received Precisely What He Requested

Moore alleges, without citation to any authority from this Court, that "there is no dispute" that NGH failed to comply with its obligations under the ADA.  Appellant Br. at 13.  The ADA includes failure to make reasonable accommodations for a disabled but otherwise qualified employee in its definition of "discrimination," and the legal framework for failure to accommodate claims is a version of the framework for disability discrimination claims. *Kleiber*, 485 F.3d at 868.

NGH cannot be held liable for failing to provide an accommodation that Moore never requested for a disability that NGH was unaware Moore had.  Instead, the record shows that Plaintiff did not disclose any disabilities or physical limitations when he was hired.  His job application left that section blank.  (Application, R.10-12, PageID#219.)  The Manager testified:

> Q. And did he ever … give you any notice of his disability or inability to perform any of the essential functions of his job?
> A. No.
> . . .
> Q. Did he ever complain to anyone about the failure to give him accommodations based on a perceived disability?
> A. No.

(Kaur Depo., R.10-2, PageID#196.)  This evidence is undisputed.

Even if his scoliosis qualified as a disability under the ADA, the record supports that NGH was not aware of Plaintiff's alleged disability until he provided a note from a chiropractor.  (Kaur Depo., R.10-2, PageID#184, 196.)  And then, after the note was provided, NGH allowed him to be on "light duty" as he had requested.  (Kaur Depo., R.10-2, PageID#196.)  This case resembles *Cooley v. Fedex Freight, Inc.*, 6th Cir. No. 19-1413, 2020 U.S. App. LEXIS 29071, at *7-10 (Sep. 11, 2020).  In *Cooley*, as in this case, a plaintiff in a disability case "admitted that he did not disclose his disability to [the employer] when he was hired."  And, in *Cooley*, as in this case, the record reflected that NGH "eventually offered accommodations."  This Court in *Cooley* determined that, even when viewing the evidence in the light most favorable to the plaintiff, under these facts his claims could not survive summary judgment.

Moore claims that he can, nonetheless, sustain a failure to accommodate claim because the "light duty" assignment was "revoked." Appellant Br. at 15-16. That is not what the record shows. The only accommodation identified in the record is the "light duty" Moore was permitted to perform sin March 2021. The note from the chiropractor suggested only that he should be on light duty only *for five days*. (Authorization, R.10-8, PageID#214.) Moore provides no evidence that he needed further accommodations either prior to this time or at the end of this five day period.

The argument that NGH failed to engage in an informal, interactive process with Moore is similarly unsupported by the record. *See* Appellant Br. at 18. When Moore presented a request for light duty, NGH made that accommodation. Moore had suggested that the accommodations was supposed to be temporary and nothing more was necessary:

> And I was talking to my doctor, and that's -- he said, you know, you need to be on light duty, he said, because all your tissue is inflamed back here…. He said well, we'll have -- we'll put you on light duty for a little bit and see how things go and then -- until your back gets -- you know, it's not inflamed, and we'll go from there. I said okay, fine. *And then, you know, that was it.*

(Pl. Depo., R.10-1, PageID#166 (emphasis supplied).) Since NGH gave him what he wanted, it is hard to see how any further interactive process would be necessary or useful. Moreover, the record shows that even before this accommodation, his supervisors engaged in an interactive process by discussing his poor performance and Plaintiff agreed that he would be able to complete the assigned tasks. (Statement, R.10-

5, PageID#209 ("there was a conversation on the performance and quality of work of [Plaintiff], following the conversation there was an agreement that tasks given to him would be completed and quality of work would improve").)

Finally, in order to prevail on his failure to accommodate claims, Moore must show that NGH failed to provide the necessary reasonable accommodation. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018) (describing elements of claim). Assuming Moore had a disability, and assuming that this disability was disclosed, the record shows that the one time Moore requested an accommodation for health issues, NGH more than complied with the law by allowing him to be on "light duty." Moore brought in a one-page note from his chiropractor suggesting that he be placed on "light duty" for a few days. NGH accommodated this request; Moore was permitted to work on "light duty" without requesting any additional documentation. The Manager testified:

> Q. Did he provide any other documentation along with this document?
> A. No.
> Q. Did he provide a description of what injuries or disabilities he had?
> A. No.
> Q. Did you make accommodations for him as a result of receiving this document?
> A. Yes.
> Q. And after the last date of this document, March 8th of 2021, did he indicate to you that he was unable to perform any of his job duties?
> B. No.

(Kaur Depo., R.10-2, PageID#196.)

### 5.    Moore Fails To Satisfy The Causation Element For A Retaliation Claim

The *McDonnell Douglas* framework also applies to retaliation claims. Moore bears the initial burden of establishing a *prima facie* case, which can be done by showing "(1) that he engaged in a protected activity; (2) that the defendant had knowledge of his protected conduct; (3) that the defendant took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 523 (6th Cir. 2008), *quoting Weigel v. Baptist Hosp. of E. Tenn.*, 302 F.3d 367, 381 (6th Cir. 2002)). If Moore establishes a *prima facie* case of retaliation, the burden shifts to NGH to articulate a non-discriminatory reason for its actions; Moore may then attempt to show that this reason was pretextual. *Id.* at 526.

Moore makes barely any effort in his brief to set forth a *prima facie* case that he was fired for a retaliatory reason. Regardless, the most fatal flaw to Moore's retaliation claim, however, is that Moore has not presented sufficient evidence to satisfy the causation requirement. Moore argues that he engaged in protected activity when he "requested accommodations from his manager at Kings Inn regarding activities that interfered with his disability." Appellant Br. at 18-19.[12] He offers no other evidence of causation. This temporal evidence, standing alone, is insufficient to establish a causal

---

[12] Moore cites only his deposition for this claim, referring to Page ID #161-162. This portion of the record does not support this claim.

connection for a retaliation claim. "This court has recognized that temporal proximity 'is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual.'" *Yelder v. Norfolk S. Ry.*, 6th Cir. No. 21-1141, 2022 U.S. App. LEXIS 22608, at *14 (Aug. 12, 2022), *quoting Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 317 (6th Cir. 2001) (citations omitted).[13]  This Court has held that "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 421 (6th Cir. 2021), *citing Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012). Moore offers, in his Brief, no such 'other, independent evidence.'  And, even if Moore could successfully assert sufficient temporal proximity by itself, his misconduct subsequent to the submission of his request for light duty constitute "'an intervening legitimate reason' to take an adverse employment action" which "'dispels an inference of retaliation based on temporal proximity.'" *Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013), *quoting Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012).

---

[13] This Court's causation jurisprudence suggests that there is no bright line rule for the amount of time that may elapse between a protected activity and an adverse employment action before there is a lack of temporal proximity.  This Court has rejected temporal proximity arguments for periods of less than six months. *See, e.g., Cooper v. City of N. Olmsted*, 795 F.2d 1265, 1272 (6th Cir. 1986) ("The mere fact that [the plaintiff] was discharged four months after filing a discrimination claim is insufficient to support an inference of retaliation.").

Moore's retaliation claims fails for two additional reasons. First, Moore never reported unfair treatment related to his alleged disability to a supervisor. (Pl. Depo., R.10-1, PageID#163.) And, second, as set forth *infra*, even if he could make a *prima facie* case, NGH had numerous non-discriminatory reasons to terminate Moore. (*See e.g.* Kaur Depo., R.10-2, PageID#193.).

### 6.    NGH Had A Legitimate Non-Discriminatory And Non-Retaliatory Reason To Terminate Moore

Assuming that Moore can make a *prima facie* case that he was fired for a discriminatory or retaliatory reason, (*but*, *see*, *supra*), his claim still fails. Moore, in his brief, fails to identify any specific adverse employment action, beyond termination, based on his disability. Moore argues, "There is no dispute that Moore was disciplined and terminated in part due to his failure to complete job duties." Appellant Br. at 16. Not so. Moore was terminated because he was "disruptive," "disobedient," and "did not listen." (Kaur Depo., R.10-2, PageID#176.) The manager testified:

> … He would not show up to work. He would show up to work late… He would not tell us where he's at. When we need rooms cleaned, we're hunting down to look for him. He was just disobedient. He was crazy.

(Kaur Depo., R.10-2, PageID#193.) Further:

> He was just a bad employee, just simple as that. He just didn't do his job as described. So that's honestly the whole reason here, that he just was being disrespectful and rude to staff, including guests. He was disobedient most of the time, did not follow any  directions, any rules. Like that is simply it. He was just a terrible employee, and I would never hire him again.

(Kaur Depo., R.10-2, PageID#201.)  These reasons, as described *supra* in the statement of facts, were well documented over a period of time.  (*See*, *supra*, Statement of Facts (collecting documents.)[14]

NGH relied upon factors unrelated to Moore's alleged disability in making its employment decision prior to any accommodation and that his poor job performance was completely unrelated to his claimed disability.  On February 8, 2021 – more than month before Moore provided his "note" permitting "light duty," the record shows that Moore's supervisor was complaining that Moore "disregarded every task that was given…" and was "rude and disrespectful." (Email, R.10-3, PageID#207; Memo., R.10-4, PageID#208.).  Moore was subsequently described as insubordinate and received, on February 16, 2021, a written warning after he showed up late for work.  (Statement, R.10-5, PageID#209; Disciplinary Action Form, R.10-6, PageID#211.)  Moore was given a "Second Warning" just three days before he presented the note from the chiropractor for, inter alia, becoming combative."  (Employee Write Up, R.10-7, PageID#212-231.)

---

[14] Moore fails to cite sufficient evidence that would allow a jury to reasonably reject NGH's reason for the firing and infer that the real reason was discrimination. But even then, if NGH had an honest belief in its reasons for firing Moore – that is, if the decision was reasonably informed and considered – then Moore cannot establish that those reasons were pretextual even if they were wrong. *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 559 (6th Cir. 2009).

**CONCLUSION**

The Judgment of the District Court in favor of Appellee should be affirmed.


Respectfully submitted,

_____/s/ Joshua Adam Engel_____
Joshua Adam Engel (0075769)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Suite 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com


**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g) and 6 Cir R. 32(a) I hereby certify that this document complies with the type-volume limitation. This document contains 7429 words, excluding the portions listed in 6 Cir. R. 32(b), as calculated by Microsoft Word.


/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:


/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)

**DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS**

| Record Entry Number | Description | Date Entered | PageID# Range |
|---|---|---|---|
| | | | |
| 1 | MOTICE OF REMOVAL | 9/23/22 | 1 - 2 |
| 2 | COMPLAINT | 9/23/22 | 75-92 |
| 3 | AMENDED COMPLAINT | 9/23/22 | 93-109 |
| 4 | ANSWER TO AMENDED COMPLAINT | 11/15/22 | 110-122 |
| 10 | NOTICE OF FILING OF EXHIBITS IN SUPPORT OF MOTION FOR SUMMAY JUDGMENT | 3/13/2024 | 138-139 |
| 10-1 | EXHIBIT DEPOSITION OF PLAINTIFF | 3/13/2024 | 140-171 |
| 10-2 | EXHIBIT DEPOSITION OF GK | 3/13/2024 | 172-206 |
| 10-3 | EXHIBIT FEBRUARY 8, 2021 INCIDENT REPORT EMAIL | 3/13/2024 | 207 |
| 10-4 | EXHIBIT FEBRUARY 8, 2021 INCIDENT REPORT | 3/13/2024 | 208 |

| Record Entry Number | Description | Date Entered | PageID# Range |
|---|---|---|---|
| | | | |
| 10-5 | EXHIBIT STATEMENT OF RHONDA CRADDOCK | 3/13/2024 | 209 |
| 10-6 | EXHIBIT FEBRUARY 9, 2021 EMPLOYEE DISCIPLINARY ACTION FORM | 3/13/2024 | 210-211 |
| 10-7 | EXHIBIT MARCH 10, 2021 EMPLOYEE WRITE UP | 3/13/2024 | 212-213 |
| 10-8 | EXHIBIT MARCH 13, 2021 AUTHORIZATION FOR LIGHT DUTY | 3/13/2024 | 214 |
| 10-9 | EXHIBIT MARCH 15, 2021 STATEMENT OF GINI KAUR | 3/13/2024 | 215 |
| 10-10 | EXHIBIT MARCH 18, 2021 STATEMENT OF GINI KAUR | 3/13/2024 | 216 |
| 10-11 | EXHIBIT STATEMENT OF NIKKI WILLIAMS | 3/13/2024 | 217-218 |
| 10-12 | EXHIBIT APPLICATION | 3/13/2024 | 219-220 |

| Record Entry Number | Description | Date Entered | PageID# Range |
|---|---|---|---|
| | | | |
| 10-13 | EXHIBIT RESPONSE TO INTERROGATORIES | 3/13/2024 | 221-246 |
| 11 | MOTION FOR SUMMARY JUDGMENT | 3/13/2024 | 247-265 |
| 13 | RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT | 4/5/2024 | 283-298 |
| 13-1 | AFFIDAVIT | 4/5/2024 | 299 |
| 14 | REPLY TO RESPONSE IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT | 4/12/2024 | 300-310 |
| 15 | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT | 11/5/2024 | 311-328 |
| 16 | JUDGMENT | 11/5/2024 | 329 |
| 20 | NOTICE OF APPEAL | 12/5/2024 | 347 |